UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE D. ELLIS,

    Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

Civil Action No. 14-13660

HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## OPINION AND ORDER

Plaintiff Julie D. Ellis brings this action under 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions. For the reasons set forth below, Defendant's Motion for Summary Judgment [Dock. #22] is GRANTED and Plaintiff's Motion for Summary Judgment [Dock. #20] is DENIED.

## PROCEDURAL HISTORY

On November 29, 2011, Plaintiff filed applications for DIB and SSI, alleging an onset date of October 4, 2011 (Tr. 234-246). After the initial denial of the claim, Plaintiff filed a request for an administrative hearing, held on September 5, 2013 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Jacqueline Y. Hall-Keith (Tr. 29). Plaintiff, represented by attorney Heidi Walkon, testified (Tr. 33-80), as did Vocational Expert ("VE")

Elizabeth Pasikowski (Tr. 80-90). On September 24, 2013, ALJ Hall-Keith found Plaintiff could perform her past relevant work as a collector (Tr. 23-24). On August 26, 2014, the Appeals Council denied review (Tr. 1-4). On September 22, 2014, Plaintiff filed for judicial review of the Commissioner's final decision in this Court.

## BACKGROUND FACTS

Plaintiff, born February 23, 1958, was age 55 when the ALJ issued her decision (Tr. 24, 234). She completed college and worked previously as an assembler, Certified Nurse Assistant ("CNA"), fast food worker, and home health care aid (Tr. 298). She alleges disability resulting from arthritis, depression, anxiety, Attention Deficit Disorder ("ADD"), and asthma (Tr. 297).

### A.  Plaintiff's Testimony

*Plaintiff's attorney prefaced her client's testimony by amending the alleged onset date to January 12, 2012.*

Plaintiff then offered the following testimony:

She was legally married but had not lived with her husband for more than seven years (Tr. 33). She stood 5'11" and weighed 220 pounds (Tr. 34). She did not experience problems reading, writing, performing calculations, or understanding English (Tr. 34). She completed CNA training and also received some credits toward completion of the requirements to be a Licensed Practical Nurse ("LPN")(Tr. 34). She received credits toward the LPN degree in 2006 or 2007 (Tr. 35). Between 2005 and 2008, she worked as a CNA and earlier, while in the Navy, she worked as a medic (Tr. 35-36). She received food stamps but no other benefits (Tr. 36). She had applied for VA benefits and had been approved but had not begun receiving benefits (Tr. 37).

Plaintiff stoppped working in September, 2008 because she "lost" her job (Tr. 38).

She had not tried to find other work since (Tr. 38). She last worked as a CNA (Tr. 38). She also worked previously as an assembler, inspector, fast food worker, and for a collection agency (Tr. 39, 44, 46-51). Her CNA work did not require her to lift more than 10 pounds or stand or walk for more than five hours in a 10-hour shift (Tr. 40-42). The fast food job had a sit/stand option and did not require lifting more than one to two pounds (Tr. 44-45). The assembling work did not require lifting more than 15 pounds (Tr. 51).

Plaintiff's work for the collection company required her to sit at a computer and make employment verifications by telephone (Tr. 52). She did the job sitting and sat for six hours out of her eight-hour work shift (Tr. 52). Her job involved opening a computer, viewing a list of contacts, then making telephone calls (Tr. 52). It took her less than a week to learn the collection company position (Tr. 52). She also worked as a deliverer (Tr. 53-55). The job did not require her to lift more than 15 pounds but involved "standing, walking, and bending" (Tr. 55).

On a scale of one to ten, Plaintiff experienced up to level ten pain due to a herniated lumbar disc (Tr. 54). Her average level of pain was a three to five (Tr. 56). She denied medication side effects (Tr. 57). The condition of arthritis affected her neck, lower back, hips, and knees (Tr. 57). Neck pain caused range of motion problems (Tr. 57). Due to arthritis, her left knee "gave out" on her at times, requiring her to use a walker (Tr. 58). She also experienced pain in her ankles and her feet from both arthritis and radiculopathy (Tr. 59). She coped with pain by reclining (Tr. 59). Pain required her to recline all day approximately six times a month (Tr. 59).

Plaintiff experienced the psychological conditions of depression, anxiety, Post Traumatic Stress Disorder ("PTSD"), "military sexual trauma," and borderline personality disorder (Tr. 60). As a result of her mental conditions, she did not want "to go anywhere .

. . do anything [or] socialize with anybody" (Tr. 60). Due to depression, she experienced crying jags (Tr. 60). She had attempted suicide three times in the past four years (Tr. 60-61). Her last suicide attempt was in July, 2010 (Tr. 61). She had not used cocaine in the past year-and-a-half (Tr. 63-64). She smoked but used alcohol on only rare occasions (Tr. 65-66). She had normal self-esteem but experienced guilt and shame (Tr. 67). She slept eight to ten hours each nights with the help of sleeping aids (Tr. 68). She kept busy by doing crafts (Tr. 68). She saw a psychiatrist every three to six months, and attended group therapy every Friday (Tr. 68). She did not experience medication side effects (Tr. 68).

Plaintiff was unable to walk for more than six blocks with her walker or more than one block without (Tr. 68). She was unable to stand for more five minutes or sit for more than 60 (Tr. 69-70). After sitting for 60 minutes, she required a position change (Tr. 70). She did not have problems with her hands or using foot controls (Tr. 70). She experienced difficulty climbing stairs and was unable to touch her toes (Tr. 71). She experienced balance problems due to left knee weakness (Tr. 71). She kept in touch with her out-of-state children and grandchildren by telephone and Facebook (Tr. 72). She had friends but did not belong to clubs or organizations (Tr. 73). She was able to throw a football back and forth with a neighborhood child (Tr. 74). She liked playing games on her smart phone and enjoyed crocheting, knitting, needlepoint, cross-stitch, embroidery, and sewing (Tr. 75).

Plaintiff used an inhaler for asthma approximately once a week (Tr. 58). She was able to take care of her personal needs (Tr. 76). She held a valid driver's license and was capable of driving at least six hours (Tr. 76). She could prepare simple meals, do the laundry, change bed sheets, vacuum, perform household chores, and take out the trash (Tr. 76). Her son drove her to the store (Tr. 76). On a typical day, she would arise at 9:00 or 10:00 a.m., then get dressed, and read a book or do crafts (Tr. 78). She watched movies on DVD or video (Tr.

78). She experienced problems concentrating when experiencing severe pain, noting that she experienced level ten pain around three times a week at which times she spent most of the day reclining (Tr. 78).

### B.     Medical Evidence[1]

#### 1.    Treating Sources

May, 2009 records state that Plaintiff reported improvement in hip and knee pain with over-the-counter medicine (Tr. 388). February, 2010 treating records note that Plaintiff was depressed as a result of becoming homeless after losing her job (Tr. 379-382). June, 2010 imaging studies of the left knee showed osteoarthritis with joint effusion (Tr. 446). November, 2011 records state that Plaintiff had a quiet Thanksgiving with her boyfriend and planned to travel "down south" for Christmas (Tr. 431). December, 2011 Veterans' Administration ("VA") records state that Plaintiff experienced "chronic pain syndrome" (Tr. 356). The same month, she reported that she had enrolled in classes in Spanish and computer technology (Tr. 429).

January, 2012 VA records state that Plaintiff continued to participate in group psychotherapy (Tr. 356, 415). The same month, Joshua E. Adler, M.D. noted her complaints of low back, hip, knee, and foot pain due to osteoarthritis (Tr. 412, 677). He also noted her report that daily hydrocodone addressed the pain satisfactorily (Tr. 412). Plaintiff reported recently worsening pain in her lower back, hips, and shoulders (Tr. 412). Dr. Adler attributed the pain to osteoarthritis (Tr. 413, 678). The same month, an MRI showed a herniation at L5-S1 without encroachment onto the neural foramina (Tr. 447). An MRI of the hips was unremarkable (Tr. 448-449). Imaging studies of the bilateral shoulders were

---

[1]Medical evidence predating the alleged onset of disability (amended to January 12, 2012) is included for background purposes only.

likewise unremarkable (Tr. 450-451). January and February, 2012 VA treatment records note a history of depression and a borderline personality disorder without psychotic features (Tr. 354).

February, 2012 records state that Plaintiff attended VA-sponsored group therapy for survivors of sexual trauma (Tr. 396). The next month, she was issued a walker (Tr. 633). Notes from the same month state that Plaintiff was "cooperative," with clean clothing and the ability to sit, stand, and ambulate without a cane (Tr. 642). In April, 2012, Dr. Adler increased her dosage of hydrocodone (Tr. 593). The same month, psychiatrist Barbara Ann Day, M.D. found that Plaintiff was unemployable due to depression (Tr. 703). Also in April, 2012, Dr. Adler opined that Plaintiff was unable to stand for prolonged periods of time due to degenerative arthritis and pain and was unable to "fulfill the requirements of her normal occupation" (Tr. 704). June, 2012 therapy records state that Plaintiff was "much better" on her current psychotropic medications (Tr. 577). Prior to an August, 2012 cystoscopy, Plaintiff reported limited activity due to knee and back pain but reported that she could climb a flight of stairs and carry groceries without chest pain (Tr. 548). Therapy records from the same month state that she acknowledged her error in quitting a job to change her husband's behavior (Tr. 561). September, 2012 therapy records show that Plaintiff was appropriately dressed with good hygiene and was "an active participant" in a group discussion (Tr. 502). Plaintiff reported that she was planning a trip to Wisconsin to see her new grandchild (Tr. 504). She reported that she was "a better and nicer person with the antidepressants than without" (Tr. 504). Dr. Day described her as "quite socially isolated" with only two friends (Tr. 505). Dr. Day opined that Plaintiff was "unemployable based on her chronic depressiveness which [was] only partially responsive to meds and therapy" (Tr. 505). In (Tr. 372). In December, 2012, Dr. Adler completed a "certification of disability" on

Plaintiff's behalf, stating that she was unable to perform any substantial gainful activity (Tr. 705).

February, 2013 therapy records note a depressive disorder and a borderline personality disorder (Tr. 772). Psychiatric treating notes from March, 2013 state that Plaintiff was separated from her husband, but was currently dating and also eager to travel to visit family in Wisconsin (Tr. 756-757). She was assigned a GAF of 60[2] and deemed "stable . . . without any acute issues" (Tr. 758). Plaintiff reported "difficulty in crowded rooms" (Tr. 757). Plaintiff In April, 2013, Plaintiff reported that she was "doing well and feeling stable" (Tr. 747). May, 2013 therapy notes state that Plaintiff actively participated during the group session but had to be "redirected" occasionally (Tr. 737).

### 2. Non-Treating Sources

In February, 2012 Nick Boneff, Ph.D. performed a consultative psychological examination, noting Plaintiff's treatment for anxiety, depression, and pain resulting from arthritis (Tr. 337). Plaintiff denied current suicidal ideation and reported that her psychotropic medication improved her mood (Tr. 337). She alleged disability due to knee and joint pain (tr. 337). Dr. Boneff noted Plaintiff's report of crocheting, knitting, and embroidery; seeing her boyfriend on a daily basis; and telephone contact with her out-of-state children (Tr. 338). Plaintiff reported a normal appetite and the ability to perform self care activities (Tr. 338). Dr. Boneff noted that Plaintiff shared personal information freely (Tr. 338). Dr. Boneff assigned her a GAF of 60, noting that major depressive episodes had been

---

[2] A GAF score of 51–60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders—Text Revision* ("*DSM–IV–TR* "), 34 (4th ed. 2000).

resolved with medication (Tr. 339). He found that her condition would not prevent her from resuming work-related activities on a sustained basis (Tr. 339).

The same day, Ernesto Bedia performed a consultative physical examination, noting Plaintiff's report of lower back and knee pain (Tr. 342). Plaintiff reported that she was unable to walk more than four blocks on a bad day (Tr. 342). As to the condition of asthma, Plaintiff reported that she coped with the condition by using an inhaler every few days (Tr. 342). She admitted that she continued to smoke on an occasional basis (Tr. 342). Dr. Bedia noted a full range of motion and a stable gait (Tr. 344, 346). He observed that Plaintiff "carrie[d] a walker but [could] walk without it" (Tr. 344, 349). An x-ray of the knees showed only "minimal" degenerative changes and a small spur formation of the patellae (Tr. 345).

### C. Vocational Expert Testimony

VE Elizabeth Paikowski classified Plaintiff's previous work as a companion as unskilled and exertionally light; fast food clerk, unskilled/light (sedentary as performed); production clerk, unskilled/light or unskilled/sedentary; collector, semiskilled/sedentary (unskilled as performed); driver parts counter clerk, semiskilled/heavy[3] (Tr. 82) The ALJ then posed the following question, describing an individual of Plaintiff's age, educational level, and work experience:

> [N]o difficulties with communication with a residual functional capacity to

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

perform simple, routine, sedentary work, sit/stand option as needed. We're going to avoid concentrated exposure to heat and humidity. And we'll go occasional contact with supervisors, co-workers (Tr. 83).

The VE testified that the individual could perform the past relevant work of collector as previously performed by Plaintiff (Tr. 83). The VE noted that the position of collector, as described by Plaintiff, did not require her to interact with a computer other than procuring a contact information list she used to make telephone calls (Tr. 84). The VE testified that both the portion of the job requiring the computer use and the telephone calls could be performed standing or sitting (Tr. 84-88). She testified that the individual could walk away from the work station for 70 minutes each workday as long as she met her quotas (Tr. 89-90).

### D. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ determined that Plaintiff experienced the severe impairments of "degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of the hips; asthma; osteoarthritis of the knees; depression; and anxiety" but found that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18-19). The ALJ found that Plaintiff experienced mild restriction in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 19). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following additional restrictions:

> [A]void concentrated exposure to heat and humidity in addition to the ability to alternate between sitting and standing at will. Furthermore, the claimant is limited to simple, routine and repetitive tasks that involve no more than occasional contact with co-workers and supervisors (Tr. 20).

Citing the Plaintiff's description of her job activities and the VE's testimony, ALJ found that Plaintiff could perform her past relevant work as a collector (Tr. 23-24).

The ALJ discounted Dr. Alder's April, 2012 finding that Plaintiff was unable to return to her "normal occupation" (Tr. 22). The ALJ noted that Dr. Alder found Plaintiff disabled using standards other than those set forth by the SSA (Tr. 22). The ALJ observed that while Dr. Alder found that Plaintiff was unable to stand for long periods, the work restriction did not preclude sedentary work with a sit/stand option (Tr. 23).

The ALJ accorded "little weight" to Plaintiff's allegations of disability (Tr. 23). She noted that the treating records did not support Plaintiff's claim that she need to lie in bed all day six times a month due to pain (Tr. 23). The ALJ found that Plaintiff's depressive episodes had been "resolved and managed" with medication (Tr. 22).

### STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*,

884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

A. **The Vocational Testimony**

Plaintiff argues first that the substantial evidence does not support the Step Four finding that she could perform her past relevant work as a collector. *Plaintiff's Brief* , 3-6, *Docket #20.* She contends that the hypothetical question forming the basis of the VE's job testimony erroneously omitted reference to her degree of contact with the general public. *Id.* at 3-4. She also points out that the former job of collector, as performed at the unskilled level, stands at odds with the DOT listing describing the job as semiskilled. *Id.* at 4-6. She argues that the ALJ erred by failing to resolve the conflict between the DOT and the VE's

-11-

testimony that she could perform the former job. *Id.*

Plaintiff's argument that she is unable to perform her past relevant work pertains to the ALJ's findings at Step Four of the sequential analysis. At Step Four, a three-prong test must be met in order to find that a claimant can return to her past relevant work: "(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC permits a return to that past job." SSR 82–62, 1982 WL 31386, *2. The Step Four determination can be supported by the finding that claimant can perform her past relevant work as "actually performed," or, "as generally required by employers throughout the national economy." SSR 82–61, 1982 WL 31387, *2 (1982). At Step Four of the sequential analysis, the claimant "bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work" either as previously performed or as generally required in the national economy. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003).

Neither of Plaintiff's contentions provides grounds for remand. Her argument that the hypothetical question and corresponding RFC ought to have including limitations on interaction with the public is not borne out by the record. Consultative source Dr. Boneff found that Plaintiff's mental issues had been resolved with medication, noting that her psychological conditions would not limit her work abilities (Tr. 339). His findings are consistent with February through April, 2013 treating records stating that Plaintiff was making travel plans, dating, and "doing well and feeling stable" (Tr. 747, 756-757). While Plaintiff reported "difficulty in crowded rooms," her claim is addressed by the hypothetical modifier of "occasional contact with supervisors [and] coworkers" (Tr. 83, 757). As such, the ALJ did not err in declining to include a limitation contact with the public. *See Stanley*

*v. Secretary of Health and Human Services,* 39 F.3d 115, 118–119 (6th Cir.1994)(ALJ not obliged to credit rejected claims in question to VE or by extension, in the ultimate RFC).

Further, even assuming that Plaintiff experienced some degree of limitation in dealing with the public, the collector position required only telephone contact rather than the direct contact required by jobs such as sales clerk, fast food worker, or cashier. None of the treating or consultative records or Plaintiff's own testimony suggests that she would be unable to engage in superficial interaction by telephone.

Plaintiff's argument that the ALJ neglected to resolve the conflicts between the DOT description of the collector position and the job "as performed" likewise fails to provide grounds for remand. Plaintiff relies on SSR 00–4p, which "imposes an affirmative duty on ALJs to ask VEs if the evidence that they have provided 'conflicts with the information provided in the DOT.' " *Lindsley v. Commissioner of Social Sec.,* 560 F.3d 601, 606 (6th Cir.2009) (citing SSR 00–4p, 2000 WL 1898704, *4). Plaintiff's argument that the ALJ did not resolve the differences between the job as performed and the DOT fails for two reasons: First, the VE volunteered that the collector position in the DOT, listed as semiskilled, differed from Plaintiff's description of the former job as unskilled[4] (Tr. 52, 81-82). It is unclear how, it at all, the ALJ was required to further address the discrepancy. Further, at Step Four of the sequential analysis, the Commissioner is required to consider first whether

---

[4]

The position of "collector," as described by DOT Code 241.367-010, is a semiskilled position. http://www. occupationalinfo.org/24/241367010.html. (Last visited, March 20, 2016). However, Plaintiff reported that she learned the collector position in less than one week which would classify the work as unskilled (Tr. 52). Specific Vocational Preparation ("SVP") 2, requiring "up to and including one month" training is classified as unskilled work. http://www.occupationalinfo. (Last visited March 20, 2016); SSR 00–4p, 2000 WL 1898704, *3 (December 4, 2000)

the claimant has the RFC to perform the functional demands and duties of a past job *as actually performed*. SSR 82–61 at *2. If so, the claimant is not disabled. If the claimant is unable to return to the work as actually performed, the Commissioner is *then* required to consider whether the claimant can perform the functional demands and job duties of the occupation "as generally required by employers throughout the national economy." *Id*. By Plaintiff's own account, her former job as a collector, as performed, fell within the parameters of the RFC for sedentary, unskilled work. As such, the ALJ was not required to inquire into how the position was generally performed in the national economy. Explained differently, the DOT job code for the collector position (describing the way the position would be generally performed) is wholly moot, given Plaintiff's acknowledgment that she previously performed the job at the unskilled level.

Because the ALJ's Step Four determination does not contain substantive or procedural error, a remand on this basis is not warranted.

### B. The Treating Physician Analysis

Plaintiff also faults the ALJ for discounting Dr. Adler's April 17, 2012 opinion that Plaintiff was "unable to perform the requirements of her normal occupation." *Plaintiff's Brief* at 6-8 (*citing* Tr. 22). She argues that the ALJ did not address the factors to be considered in discounting the treating physician's opinion such as the length of and frequency of treatment, the treater's speciality, and other factors listed in 20 C.F.R. 1527(c). *Id.*

Plaintiff is correct that the failure to articulate "good reasons" for rejecting a treating physician's opinion regarding a claimant's medical condition constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir. 2013); *Wilson v. CSS,* 378 F.3d 541, 544 (6th Cir. 2004); § 404.1527(c)(2)). "[T]he Commissioner imposes on its decision-makers a clear

duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011). In explaining the reasons for giving less than controlling weight to a treating physician opinion, the ALJ must consider (1) "'the length of the... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) "consistency...with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, 378 F.3d at 544–546; § 404.1527(c). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, at 376.

Dr. Adler's opinion(s) states that Plaintiff (1) was unable to stand for extended periods due to degenerative arthritis, (2) was unable to perform "the requirements of her occupation," and, (3) was permanently disabled (Tr. 704-705). The ALJ accurately summarized these findings, and then provided his reasons for declining to accord them controlling weight:

> The opinions of Dr. Alder are given little weight because it is not clear how he determined that the claimant was unable to fulfill the requirements of her normal occupation. Dr. Alder is not qualified to assess the requirements of the claimant's past work and make a determination as to her ability to perform them. Furthermore, it is not clear how the claimant 's inability to stand for prolonged periods made her unable to perform her past relevant work (Tr. 22-23).

While the ALJ stated that he accorded "little weight" to Dr. Adler's findings, in fact the he adopted the portion of the findings constituting "medical opinions" and rejected only the parts of Dr. Adler's findings constituting "legal opinions." As Defendant notes, the only portion of Dr. Adler's findings constituting a medical opinion is his statement that Plaintiff was unable to stand for extended periods (Tr. 704). *Defendant's Brief,* 15, *Docket #22.* The

ALJ adopted this portion of Dr. Adler's opinion by including a sit/stand at will option in the RFC (Tr. 20). The ALJ did not err in noting that Dr. Adler's legal conclusion that Plaintiff was unable to perform the requirements of her normal occupation was unaccompanied by any functional assessment (Tr. 22-23). As Defendant further notes, the VA records by Dr. Adler and others refer only to Plaintiff's past work as a care giver/CNA. *Defendant's Brief* at 15. Assuming Dr. Adler's findings can be interpreted to state that her inability to stand for extended periods precluded her work as a caregiver/CNA, the ALJ's determination that she could perform her past relevant work as a collector does not contradict Dr. Adler's finding.

Likewise, the ALJ did not err in declining to adopt Dr. Adler's statement that Plaintiff was permanently disabled from all work. The Commissioner, not a treating source, is responsible for deciding whether a claimant meets "the statutory definition of disability." 20 C.F.R. § 404.1527(d)(1). Although Plaintiff faults the ALJ for omitting mention of the factors listed in § 404.1527(c)(*see above)* in declining to accord controlling weight to the opinion, the ALJ was not required to apply such factors or provide "good reasons" for rejecting Dr. Adler's legal conclusion that Plaintiff was permanently disabled. While a treating source opinion regarding a claimant's *medical* condition is entitled to deference, the SSA "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." § 404.1527(d)(3).

More generally, the ALJ's conclusion that Plaintiff was not disabled is strongly supported by the medical transcript and Plaintiff's own testimony. She acknowledged that she could sit for up to one hour before requiring a position change (Tr. 70). She admitted to a wide variety of household and craft activities despite the back and knee problems and enjoyed playing games on her smart phone (Tr. 75-76). February, 2012 treating records state that she was able to walk without a cane (Tr. 642). As noted by the ALJ, Dr. Bedia's

consultative observations from the same month include a full range of motion and a stable gait (Tr. 344-346). Plaintiff acknowledged that she could walk up to four blocks on a "bad" day (Tr. 342). Dr. Boneff's consultative finding that the depressive symptoms had resolved and that Plaintiff was capable of returning to work is consistent with the preponderance of the treating evidence for the relevant period (Tr. 339).

Because the ALJ's determination was well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it will not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment [Dock. #22] is GRANTED and Plaintiff's Motion for Summary Judgment [Dock. #20] is DENIED.

IT IS SO ORDERED.

<pre>                                        s/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE</pre>

Date: March 21, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on March 21, 2016, electronically and/or by U.S. mail.

<pre>                                        s/C. Ciesla
                                        Case Manager</pre>